# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. **David Boggs** )<br>2. **Sue Boggs,** )<br>)<br>**Plaintiffs,** )<br>)<br>**vs.** )<br>)<br>1. **Great Northern Insurance Company,** )<br>2. **Federal Insurance Company,** )<br>)<br>**Defendants.** ) | **Case No. 08-CV-660-CVE-PJC** |

## DEFENDANTS GREAT NORTHERN INSURANCE COMPANY
## AND FEDERAL INSURANCE COMPANY'S RESPONSE
## TO PLAINTIFFS' PARTIAL
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

**RHODES, HIERONYMUS, JONES,
TUCKER & GABLE, PLLC**

/s/ Kerry R. Lewis
Kerry R. Lewis, OBA 16519
John H. Tucker, OBA 9110
100 West 5th Street Suite 400
Tulsa, Oklahoma 74103-4287
(918) 582-1173
(918) 592-3390 Facsimile
jtucker@rhodesokla.com
klewis@rhodesokla.com
ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS .......1

I.   DEFENDANTS OWED NO DUTY TO DEFEND PLAINTIFFS IN THE UNDERLYING
     ACTION BECAUSE THERE WAS NO POTENTIAL FOR LIABILITY UNDER THE POLICIES ...2

     A.   THE LANGUAGE IN DEFENDANTS' POLICIES DOES NOT REQUIRE DEFENDANTS
          TO DEFEND AGAINST CLAIMS FOR NON-COVERED ACTIONS OCCURRING
          OUTSIDE THE POLICY PERIOD ..............................................................................2

          B.   DEFENDANTS OWED NO DUTY OF DEFENSE TO PLAINTIFFS BASED ON THE
               CLAIMS BEING ASSERTED BY THE WILLIAMSES ....................................................7

               1.   THE CLAIMS MADE BY THE WILLIAMSES WERE NOT
                    "PROPERTY DAMAGE" CLAIMS AS CONTEMPLATED BY THE
                    INSURANCE POLICIES ................................................................................8

                    A.   THE ARGUMENT THAT "PROPERTY DAMAGE" IS ESTABLISHED
                         BY THE CLAIM THAT THE CHIMNEYS CREATED A HAZARDOUS
                         CONDITION THAT VIOLATED CODES AND HAD TO BE REPLACED
                         FAILS ...............................................................................................8

                    B.   RECONSTRUCTION OF THE FIREPLACES DOES NOT CONSTITUTE
                         "PROPERTY DAMAGE" ...............................................................15

                    C.   PLAINTIFFS' ARGUMENT THAT "LOSS OF USE" OF THE
                         FIREPLACES OR OTHER PARTS OF THE RESIDENCE CONSTITUTE
                         "PROPERTY DAMAGE" MUST FAIL ............................................17

               2.   EVEN IF THERE IS A FINDING OF AN "OCCURRENCE", THERE IS STILL
                    NO COVERAGE UNDER THE INSURANCE POLICIES .................................18

               3.   MULTIPLE EXCLUSIONS EXIST WHICH PRECLUDE COVERAGE .............19

               4.   THERE WAS NO DUTY TO DEFEND PLAINTIFFS FOR CLAIMS MADE BY
                    THE WILLIAMSES ...................................................................................22

II.  DEFENDANTS OWE NO DUTY TO INDEMNIFY PLAINTIFFS .............................................22

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. Sur. Co. v. Dow Chemical Co.*,
10 F. Supp.2d 771 (E.D. Mich. 1998) ...........................................................................................21

*Bank of Oklahoma, N.A. v. Continental Cas. Co.*,
1992 OK CIV APP 128, 849 P.2d 1091 .....................................................................................21

*Bankers Trust Co. v. Brown*,
2005 OK CIV APP 1, 107 P.3d 609 ............................................................................................19

*Board of Education v. A.C.&S, Inc.*,
546 N.E.2d 580 (Ill. 1989) ..........................................................................................................11

*Conner v. Transamerica Ins. Co.*,
1972 OK 64, 496 P.2d 770 ....................................................................................................... 3-5

*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*,
74 P.3d 294 (Colo. 2003) ............................................................................................................14

*Economy Lumber Co. of Oakland, Inc. v. Insurance Co. of North America*,
204 Cal. Rptr. 135 (Cal. Ct. App. 1984) .....................................................................................16

*Ehlers v. Johnson*,
476 N.W.2d 291 (Wis. Ct. App. 1991) ........................................................................................18

*Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805 (7th Cir.1992),
*cert. denied*, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993) .................................. 11-13

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*,
193 F.3d 966 (8th Cir. 1999) .................................................................................................. 15-16

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*,
266 F.3d 859 (8th Cir.2001) .................................................................................................. 12-13

*Faulkenberry v. Kansas City Southern Railway Company*,
1979 OK 142, 602 P.2d 203 ........................................................................................................19

*Federated Mut. Ins. Co. v. Concrete Units, Inc.*,
363 N.W.2d 751 (Minn.1985) .....................................................................................................13

*Fidelity & Deposit Co. of Maryland v. Hartford Cas. Ins. Co.*,
215 F. Supp. 2d 1171 (D.Kan. 2002) ..........................................................................................12

ii

*First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland*,
1996 OK 105, 928 P.2d 298 ..............................................................................................................3

*Gardner Const. Co. v. Assurance Co. of America*,
2000 WL 1677959 (N.D. Cal. Nov. 3, 2000) ...............................................................................14

*Gaylord Chem. Corp. v. ProPump, Inc.*,
753 So.2d 349 (La. Ct. App. 2000) ...............................................................................................15

*Gentry v. American Motorist Ins. Co.*,
1994 OK 4, 867 P.2d 468 ..............................................................................................................19

*Gray v. Zurich Insurance Company*,
419 P.2d 168 (Cal. 1966) ................................................................................................................4

*Hauenstein v. St. Paul-Mercury Indem. Co.*,
242 Minn. 354, 65 N.W.2d 122 (1954) .........................................................................................13

*Hawkeye-Security Insurance Co. v. Davis*,
6 S.W.3d 419 (Mo.App.1999) ......................................................................................................13

*Jares v. Ullrich*,
667 N.W.2d 843 (Wis. Ct. App. 2003) ..................................................................................... 9-10

*Massachusetts Bay Ins. Co. v. Gordon*,
708 F.Supp. 1232 (W.D. Okla. 1989) ......................................................................................... 5-7

*Mutlu v. State Farm Fire and Cas. Co.*,
785 N.E.2d 951 (Ill. App. 2003) ............................................................................................ 17-18

*National Union Fire Ins. Co. of Pittsburgh v. Terra Industries, Inc.*,
346 F.3d 1160 (8th Cir. 2003) ......................................................................................................14

*New Hampshire Ins. Co. v. Vieira*,
930 F.2d 696 (9th Cir. 1991) ........................................................................................................16

*Rogers v. Meiser*,
2003 OK 6, 68 P.3d 967 ................................................................................................................19

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
78 Cal. App. 4th 847 (Cal. Ct. App. 2000) ...................................................................................14

*Sheets v. Brethren Mut. Ins. Co.*,
679 A.2d 540 (Md. 1996) ........................................................................................................ 14-15

iii

*Silver v. Slusher,* 1988 OK 53, 770 P.2d 878,
*cert. denied* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989) ...................................................19

*Smith v. Katz,*
595 N.W.2d 345 (Wis. 1999) ...................................................................................................... 9-10

*St. Paul Fire and Marine Ins. Co. v. Pioneer Area Vocational-Technical School,*
1993 OK CIV APP 24, 852 P.2d 795 ...............................................................................................6

*State Farm & Cas. Co. v. Tillerson,*
777 N.E.2d 986 (Ill. App. 2002) ....................................................................................................19

*Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,*
579 F.2d 561 (10th Cir. 1978) ........................................................................................................21

*Torres v. Sentry Insurance,*
1976 OK 195, 558 P.2d 400 ......................................................................................................... 5-6

*Travelers Ins. Co. v. Eljer Mfg., Inc.,* 307 Ill.App.3d 872, 241 Ill.Dec. 178, 718 N.E.2d 1032
(1999) *rev'd in part on other grounds,* 2000 WL 1763322, 2000 Ill. LEXIS 1712, at (Ill. Dec. 1,
2000) *reh'g granted,* 2001 Ill. LEXIS 231 (Ill. Jan. 29, 2001) ......................................................13

*Travelers Ins. Co. v. Eljer Mfg., Inc.,*
197 Ill.2d 278, 258 Ill.Dec. 792, 757 N.E.2d 481 (2001) .............................................................12

*U.S. Fidelity & Guar. Co. v. Murray Ohio Mfg. Co.,*
693 F. Supp. 617 (M.D. Tenn. 1988) ...............................................................................................3

*U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.,*
578 N.E.2d 926 (Ill. 1991) ........................................................................................................ 11-12

*U.S. Fidelity & Guaranty Co. v. Briscoe,*
1951 OK 386, 239 P.2d 754 ........................................................................................................ 4-7

*Warrantech Corp. v. Steadfast Ins. Co.,*
210 S.W.3d 760 (Tx. Ct. App. 2006) .............................................................................................21

*Western Cas. & Sur. Co. v. Polar Panel Co.,*
457 F.2d 957 (8th Cir.1972) ..........................................................................................................13

*Wood v. Safeco Ins. Co. of America,*
980 S.W.2d 43 (Mo. Ct. App. 1998) ..............................................................................................15

*Wyoming Sawmills, Inc. v. Transportation Ins. Co.,*
282 Or. 401, 578 P.2d 1253 (1978) ...............................................................................................13

## OTHER AUTHORITIES

7 COUCH ON INSURANCE 3D § 101:2, at 101-8 (1997) ...................................................................21

7 COUCH ON INSURANCE 3D § 102:9, at 102-26 (1997) .................................................................21

*Merriam-Webster Dictionary* 358 (1974) .....................................................................................17

COME NOW Defendants Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal Insurance") (jointly referred to as "Defendants") and submit the following response and objection to Plaintiffs' Partial Motion for Summary Judgment (Dkt. No. 26).

## RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS

Plaintiffs have included 23 paragraphs of "Additional Material Undisputed Facts" for the Court's consideration. There are addressed below.

1. The "facts" set forth in "The Boggses' Construction and Sale of the House", paragraph 1-7, are immaterial, as the information contained within them does not aid in the determination of whether there is potentially coverage under the policy. The fireplace issues experienced by the Williamses were due to construction defects (size of flues installed) which, as asserted by the Williamses' expert, required demolition of the entirety of each of the fireplaces to rectify. What problems the Boggses themselves experienced, what the Boggses' ultimately knew about the construction defects prior to the sale to the Williamses, and the actual problems the Williamses experienced simply do not matter. The issue is whether or not there was an occurrence and/or property damage – which there were not.

2. The "facts" set forth in "The Williamses' False and Fraudulent Allegations Against the Boggses and the Defendants' Incorrect Coverage Denials", paragraphs 8-21, are immaterial as well. While Defendants object to the "commentary" included in numerous of Plaintiffs' "facts" as this is simply unsupported hyperbole (¶ 10 "[i]gnoring the fact that the Williamses' Petition reserved the right to recover damages in excess of the repair costs"; ¶ 12 "again incorrectly"), even if they are each true, none of them impact the Court's ability to find in Defendants favor on their Motion for Summary Judgment.

3.     The "facts" set forth in "The Boggses' Insurance Policies and Their Terms", paragraphs 22-23, simply sets out within the brief various policy provisions which are contained within the policies issued by Defendants. These provisions are obviously not the complete language of the parties' insurance contracts, which are attached to Defendants' Motion for Summary Judgment and incorporated in its entirety for the Court's consideration.

## I.     DEFENDANTS OWED NO DUTY TO DEFEND PLAINTIFFS IN THE UNDERLYING ACTION BECAUSE THERE WAS NO POTENTIAL FOR LIABILITY UNDER THE POLICIES.

Contrary to Plaintiffs' assertion, Defendants did not employ the so-called "Eight Corners" rule to their evaluations of the duty to defend Plaintiffs in the underlying action. Defendants evaluated the underlying Petition, the policies at issue and information provided to them by Plaintiffs and other sources. Following their evaluations, Defendants properly concluded there was no duty to defend Plaintiffs in the underlying action because there was no possibility of liability under the policies. Plaintiffs failed to address in their Motion the consideration by Defendants of the claims asserted in the underlying action relative to the specific types of risks contracted for and covered under the policies. When this comparison is made, Defendants properly chose not to provide a defense to the underlying claims. Not even hindsight and Plaintiffs' extensive list of "facts" could lead to a finding that any duty to defend or indemnify Plaintiffs for the matter ever existed.

### A.     THE LANGUAGE IN DEFENDANTS' POLICIES DOES NOT REQUIRE DEFENDANTS TO DEFEND AGAINST CLAIMS FOR NON-COVERED ACTIONS OCCURRING OUTSIDE THE POLICY PERIOD.

The mere fact the policies contain language agreeing to defend a suit "seeking covered damages for personal injury or property damage … even if the suit is groundless, false or fraudulent" does not guarantee Plaintiffs a defense against any and all claims asserted against

2

them.[1]  Defendants, when deciding whether the claims were covered, assumed that all of the allegations were true.  The real question is whether the claims must arise out of alleged damages for personal injury or property damage caused by an occurrence ("covered damages").  Additionally, the occurrence must constitute "a loss or accident to which this insurance applies occurring within the policy period."  Without these minimum requirements, the policy is not applicable and no duty to defend is implicated.

Plaintiffs' argument that the "groundless, false or fraudulent" language in the policies somehow expands the duty to defend to encompass claims such as theirs is unsupported by the case law.  The claims asserted in *Conner v. Transamerica Ins. Co.*, 1972 OK 64, 496 P.2d 770 involved allegations of dishonest, fraudulent and criminal conduct by the insureds relative to their practice as attorneys.  The insurer originally agreed to defend the insureds but rescinded the defense based on an exclusionary clause for dishonest, fraudulent or criminal acts or omissions by the insureds.  After resolution of the suit, the insureds sought to recover the expenses they incurred in defending the claims.  The district court rendered judgment in favor of the insureds and the Supreme Court of Oklahoma affirmed on appeal.  The *Connor* Court concluded that the provision under the policy excluding liability for dishonest, fraudulent and criminal acts or omissions of the insured did not mean the duty to defend was also excluded when allegations of such acts are made.  *Connor*, 496 P.2d at 775.  It should be noted, that "[t]he purpose of such duty to defend provisions is for the insured to obtain protection against the expense of defending suits, whether meritorious or groundless, *within the area and scope of liability covered by the policy.*"  *U.S. Fidelity & Guar. Co. v. Murray Ohio Mfg. Co.*, 693 F. Supp. 617, 622 (M.D. Tenn. 1988) (emphasis in original).

---

[1] The language regarding the duty to defend even groundless, false or fraudulent claims from the policies is consistent with the implied-in-law duty to defend.  *See First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland*, 1996 OK 105, 928 P.2d 298.

3

Plaintiffs rely heavily on *Connor* and the ruling in *Gray v. Zurich Insurance Company*, 419 P.2d 168 (Cal. 1966) for their position that the agreement to defend "groundless, false or fraudulent" claims creates a duty to defend on the part of Defendants. The *Gray* Court focused on the ambiguity of certain exclusionary clauses and the difficulty an insured would have in evaluating the duty to defend under the policy. *Gray*, 419 P.2d at 271-272. However, the policy language in the *Connor* and *Gray* policies is different from the language in the Insurance Policies at issue. In both *Connor* and *Gray*, the policies state the insurer will defend the insured for suits seeking damages under the terms of the policy or endorsement, "even if any of the allegations of the suit are groundless, false or fraudulent." *Connor*, 496 P.2d at 773; *Gray*, 419 P.2d at 170.

The reference to groundless, false or fraudulent allegations in the *Gray* and *Connor* policies modifies the agreement to defend any suit under the policy. In contrast, the provisions of the Insurance Policies here separate the defense of groundless, false or fraudulent allegations language from the general agreement to provide a defense. The potential for confusion on the part of an insured as contemplated by Gray and Connor is not present in the Defendants' Insurance Policies because the language does not modify the agreement to defend in the same sentence. Additionally, the policies state Defendants will:

defend a covered person against any suit seeking <u>covered damages</u> for personal injury or property damage.

(emphasis added). The policies in *Connor* and *Gray* were not limited to covered damages in the way the policies at issue are limited here. The *Connor* Court recognized that when the language in a policy makes the obligation to indemnify subject to certain conditions, an insurer does not have a duty to defend if those conditions are not present. *Connor*, 496 P.2d at 775 (citing *U.S. Fidelity & Guaranty Co. v. Briscoe*, 1951 OK 386, 239 P.2d 754).

The United States District Court for the Western District of Oklahoma followed this same

4

thinking in a declaratory judgment action wherein the Court ruled that the insured's conduct was not covered under the policy and the insurer had no duty to defend the claims. *See Massachusetts Bay Ins. Co. v. Gordon,* 708 F.Supp. 1232, 1234 (W.D. Okla. 1989). Like the policies at issue here, the Personal Liability section of the policy in *Gordon* premised liability on damages "caused by an occurrence". An occurrence in *Gordon* was defined as an "accident". The *Gordon* Court concluded that the insured's assault of a third party was not an "accident" or "occurrence" as defined in the policy and accordingly, the injuries did not fall under the Personal Liability or Medical Payment sections of the policy. *Id.* at 1234.

In reaching its decision, the *Gordon* Court interpreted the policy's use of the term "occurrence" to be "a condition precedent to the plaintiff's duty to defend a suit brought against an insured" based on the language of the policy. *Id.* The Court referenced the *Torres v. Sentry Insurance*[2] decision as support for the legal holding that "a liability insurer is not obligated to defend an action against its insured where the insurer would not be liable under its policy for any recovery in such suit." *Id.* The Court in *Gordon* also distinguished the insured's reliance on *Connor*, noting that the policy in *Connor* did not contain a specific modifier conditioning the duty to defend on the occurrence of a specific event. *Id.*

An insurer is entitled to stand upon its contract. *See Briscoe,* 239 P.2d at 756. The insureds in *Briscoe* brought suit against their insurer to recover fees and expenses incurred in defending a lawsuit where their insurer denied coverage or a duty to defend. The insureds were sued for nuisance after cement dust from a construction project allegedly caused personal injury and property damage to a local family. The insurer denied the demand for indemnity and a defense on the basis the damages were not caused by an accident, as contemplated by the policy. After an initial decision in the insureds' favor, the Oklahoma Supreme Court reversed the trial

---

[2] *Torres v. Sentry Insurance,* 1976 OK 195, 558 P.2d 400, 401-02.

5

court's ruling, concluding the claims were not predicated on an accident and not within the coverage of the policy. *Id.* at 758. Since the issue of the insureds' liability was not covered by the policy, the insurer was not obligated to defend the claim. *Id.*

Plaintiffs also refer to *St. Paul Fire and Marine Ins. Co. v. Pioneer Area Vocational-Technical School*, 1993 OK CIV APP 24, 852 P.2d 795 as support for finding a duty to defend under the Insurance Policies. Although the COCA found a duty to defend in *St. Paul*, the case does not support Plaintiffs' position. In *St. Paul*, the Court analyzed the terms of the insurance contract and found that the policy unambiguously limited covered claims to those "based upon an error, omission, negligence, breach of duty or misleading statement." *Id.* at 797. The policy also stated the insurer would defend any suit brought against the insured or a covered person for covered claims. Because covered claims under the policy included an error, which the Court concluded was the basis of the underlying suit against the insureds, there was a duty to defend. *Id.* at 798. The *St. Paul* Court utilized the same analysis Defendants are advocating here. It was not the "groundless or fraudulent" language that influenced the *St. Paul* Court's decision, but instead the specific terms in the policy of what constitutes a "covered claim". *Id.* at 797-798.

The *Briscoe, St. Paul* and *Gordon* rulings make clear that Oklahoma courts recognize the ability of an insurer to modify their duty to defend, so long as it is clearly stated in the contract. Defendants did so here. The Personal Liability Coverage provision of the Great Northern homeowners' policy states:

> We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence ...

The Defense Coverages section advises that the insurer will defend:

> a covered person against any suit seeking covered damages for personal injury or property damage.

The homeowners' policy covers damages for personal injury or property damage caused by an occurrence during the policy period. Following the reasoning in *Briscoe* and *Gordon*, the duty to defend under the homeowners' policy is also limited to suits seeking damages for personal injury or property damage caused by an occurrence during the policy period.

The same modifiers are contained in the Federal Insurance Excess Policy. The Liability Coverage provision of the Excess Policy contemplates damages "caused by an occurrence." The Defense Coverages apply to "any suit seeking covered damages" for personal injury or property damage. Defendants' inclusion of the term "covered damages" in the Defense section of each Insurance Policy modifies the duty and limits a defense to those suits seeking "covered damages". The Liability provisions of each policy delineate covered damages as personal injury or property damage caused by an occurrence during the policy period. Just as the courts in *Briscoe* and *Gordon* found no duty to defend in light of no duty to indemnify, the Defendants properly denied Plaintiffs' request for a defense in the underlying lawsuit filed by the Williams because the suit did not fall within the parameters of the Insurance Policies.

The allegations asserted against Plaintiffs in the underlying lawsuit were prompted by events outside the policy period of the subject policies, thus, there was no covered claim. Additionally, as discussed more thoroughly below, the claims asserted in the underlying lawsuit were not property damage claims as contemplated under the policies at issue.

## B. DEFENDANTS OWED NO DUTY OF DEFENSE TO PLAINTIFFS BASED ON THE CLAIMS BEING ASSERTED BY THE WILLIAMSES.

Defendants' determination that they owed no duty of defense or indemnity to the Plaintiffs for the claims being asserted by the Williamses was consistent with the coverage afforded by the Plaintiffs' insurance policies – no matter whether the claims were meritorious or

7

not.

## 1. THE CLAIMS MADE BY THE WILLIAMSES WERE NOT "PROPERTY DAMAGE" CLAIMS AS CONTEMPLATED BY THE INSURANCE POLICIES.

Plaintiffs' attempts to mold the allegations made in the Underlying Litigation to fall within coverage are laborious and tortured. Initially they attempt to "compare" the two definitions of the term "property damage" to each other – and use the differences to explain why a broad interpretation should be given to one of the definitions. While this is a creative approach, it is not proper.

The insurance policies in this case were issued by two different insurance companies, Great Northern Insurance Company and Federal Insurance Company. Neither policy was written in such a way to make it appropriate to use one policy to construe policy language from the other. Plaintiffs have not provided any authority for such a construction and point to no contract provision in either policy that would lead the insured to rely on the other policy at issue for any type of contract construction or interpretation. Both policies provide the same exact coverage under the definitions of "property damage", albeit using slightly different language to achieve this same goal.

### A. THE ARGUMENT THAT "PROPERTY DAMAGE" IS ESTABLISHED BY THE CLAIM THAT THE CHIMNEYS CREATED A HAZARDOUS CONDITION THAT VIOLATED CODES AND HAD TO BE REPLACED FAILS.

In the Underlying Litigation, the Williamses claimed that the fireplaces in the home they purchased were constructed improperly and in violation of applicable building codes. They contended that Plaintiffs made false misrepresentations about the condition of the fireplaces which constituted fraud in the inducement and deceit. The Williamses also claimed that Plaintiffs negligently misrepresented the condition of the fireplace chimneys and that Plaintiffs

had a duty to repair the fireplaces to meet the building code constituting a claim for "negligent repair". As set forth above, in order to constitute "property damage" based on loss of use, there has to be physical injury to tangible property which occurred during the policy period and was caused by loss or accident.

Plaintiffs cite to the case of *Jares v. Ullrich*, 667 N.W.2d 843 (Wis. Ct. App. 2003) in support of the claim that the allegations present here, standing alone, constitute property damage. The facts in *Jares* are distinguishable from the present case. At issue in *Jares*, was a raccoon infestation in the home – not a construction defect which clearly occurred prior to the Plaintiffs' ownership of the home.

The reasoning in *Jares* is a minority viewpoint. In order to reach the decision, the court made several leaps of logic, without giving clear analysis. First, the court interpreted loss of use of the property, standing alone, as adequate to establish property damage. This decision was made despite a state supreme court decision stating that "in most instances, misrepresentations and omissions will not produce property damage as defined in insurance policies." *Smith v. Katz*, 595 N.W.2d 345 (Wis. 1999). In *Smith*, the court indicated that its pronouncement was not absolute. "We are not saying that strict responsibility misrepresentations or negligent misrepresentations can *never* cause 'property damage' as defined in the policies, particularly when 'property damage' can include 'loss of use of tangible property that is not physically injured.' But we recognize that the majority view in the cases is that misrepresentations and omissions do not produce 'property damage' as defined in insurance policies. They produce economic damage." *Id.* at 345. The court of appeals in *Jares* utilized this language as support for its decision to go against the majority viewpoint.

It is important to note that in *Smith*, when the court was making the pronouncement, the

9

policy in question provided a two-part definition for property damage which stated: "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it." In *Smith*, unlike here, there was a separate and distinct provision for "loss of use" damages when property had not been physically injured.

As Plaintiffs point out, the *Jares* court also found that the complaint filed by the buyers alleged costs to repair and restore the home due to the animal infestation which was present when they purchased it and that this was sufficient to imply there was "property damage." *Jares*, 667 N.W.2d at 847. In *Jares* a gaze of raccoons, as well as other animals, set up house under the floors and in the walls of the subject residence. The infestation included dead animal bodies, nests, feces, urine, and other matter which had to be removed. The *Jares* case did not deal with alleged construction defects that were present even before the sellers were in possession of the home where the damage to the fireplaces occurred prior to the sellers' actual ownership of the property. The damages sought here were for the costs associated with reconstructing the fireplaces to meet building code standards – not for damage to the fireplaces. The distinction to be drawn is that this case involves a construction defect and *Jares* involves an "injury to" the building. Clearly, it is implicit that when there has been an "injury to" a building there is necessarily something that has caused damage – rather than simply pre-existing damage. It makes sense that there was "property damage" to a home where an infestation of live and dead animals occurred during the policy period. The argument in *Jares* simply does not translate to the facts of this case.

As an aside, Plaintiffs' insinuation that "Chubb", which is not actually a defendant here,

10

is attempting to "hide" a six year old Wisconsin court of appeals case where the undersigned counsel was not involved, the actual companies in the instant case were not named, and which did not involve alleged misrepresentations about construction defects is noted – thereby giving Plaintiff's "side note" more attention than it actually deserves.

Plaintiff goes on to rely on a line of cases dealing with asbestos and other dangerous conditions in a structure. This theory has been referred to by some courts as "the incorporation theory", but now appears to be limited to asbestos cases specifically. First, the claims for defense and indemnity in the asbestos line of cases were made by the installers of the products, not buyers or sellers of property. In particular, the insured in *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926 (Ill. 1991) cited to by Plaintiffs was a small business that installed insulation products in buildings under construction. *Id.* at 929. Asbestos was contained in the products the company installed until the mid-1970s. *Id.* The insuring policies in question were for policy terms between 1964 and 1985, when the product was installed by insured, with various insurers. A declaratory judgment action was initiated by the insurers and ultimately it was found that a duty to defend existed. This decision was based in large part on characteristics unique to asbestos, in that the fibers can permeate an entire structure. *Id.* at 931 (relying on reasoning in *Board of Education v. A.C.&S, Inc.*, 546 N.E.2d 580 (Ill. 1989)).

The United States District Court for Kansas, in analyzing "the incorporation theory", explained why the argument is not applicable to cases not involving asbestos:

> This court's decision in *Johnson* relied on the Seventh Circuit case of *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.,* 972 F.2d 805 (7th Cir.1992), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993). In *Eljer,* the Seventh Circuit was presented with a federal diversity action in which the insured brought a declaratory judgment action against the primary liability insurers requesting a declaration of whether and when "property damage" coverage under the policies was triggered with respect to underlying claims for a defective plumbing system installed in a house. *Id.* at 807. Applying Illinois law, a divided panel of the

Seventh Circuit held that "physical injury to tangible property" occurred at the time the plumbing system was installed. *Id.* at 814.

After reviewing subsequent cases discussing the "incorporation theory," the court believes that the lone context where that theory is still viable is the asbestos cases; the broader principle espoused in *Eljer* has been rejected. *See, e.g., Esicorp, Inc. v. Liberty Mut. Ins. Co.,* 266 F.3d 859, 862 (8th Cir.2001) (explaining that, with one notable exception (*Eljer* ), courts applying the post-1973 definition of "property damage in the standard CGL policy have held that the mere incorporation of a defective component is not 'property damage' because it does not result in 'property damage' "). In fact, in *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 258 Ill.Dec. 792, 757 N.E.2d 481 (2001), the Illinois Supreme Court expressly rejected the reasoning in *Eljer. Id.* at 497. The court explained that "under its plain and ordinary meaning, the term 'physical injury to tangible property' unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension." *Id.* at 502. Based on that definition, the court rejected the argument that the very installation of a functional plumbing system into a structure constitutes "property damage." *Id.*

The court in *Traveler's Ins. Co.* distinguished one of its previous cases involving the installation of asbestos contaminated materials, *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991),* from *Eljer. Id.* at 498. The court reasoned that "the unique nature of asbestos products, which disseminate toxic fibers upon installation and continuously contaminate a structure and its contents subsequent to installation," explains why contamination, which *Wilkin* held constituted the "physical injury" to the property, occurs when the toxic substances are installed. *Id.* Based on that reasoning, the court limited the holding in *Wilkin,* explaining that it "was premised upon the specific facts before the court in that case and not upon a general proposition that incorporation of a defective component into another structure constitutes 'physical injury.'" *Id.* In sum, based on these subsequent opinions, the court believes that the "incorporation theory" has been limited to the asbestos line of cases, such as *Johnson.*

*Fidelity & Deposit Co. of Maryland v. Hartford Cas. Ins. Co.,* 215 F. Supp. 2d 1171, 1181-

82 (D.Kan. 2002). The Kansas court based, in part, its analysis on the Eighth Circuit's decision

in *Esicorp, Inc. v. Liberty Mut. Ins. Co.,* 266 F.3d 859 (8th Cir. 2001), which discusses the pre-

1973 and post-1973 standard CGL policy language for "property damage", and the significance

of the changes.

Before 1973, "property damage" in the standard CGL policy was defined as "injury to or destruction of tangible property." Applying that definition, a number

12

of courts held that diminution in the value of a building resulting from the incorporation of a defective component was covered property damage. *See Western Cas. & Sur. Co. v. Polar Panel Co.,* 457 F.2d 957, 960 (8th Cir.1972), applying Minnesota law and following *Hauenstein v. St. Paul-Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954). This line of cases supports Esicorp's incorporation argument.

However, in 1973, the definition of "property damage" in the standard CGL policy was changed to "*physical* injury to or destruction of tangible property," the language used in the policies here at issue. The Supreme Court of Minnesota and other courts construing this new definition have concluded that the mere incorporation of a defective component is not "property damage" because it does not result in "physical injury." *See Federated Mut. Ins. Co. v. Concrete Units, Inc.,* 363 N.W.2d 751, 756 (Minn.1985); *Wyoming Sawmills, Inc. v. Transportation Ins. Co.,* 282 Or. 401, 578 P.2d 1253, 1256-57 (1978). There is one notable decision to the contrary, the Seventh Circuit's divided panel opinion in *Eljer Manufacturing, Inc. v. Liberty Mutual Insurance Co.,* 972 F.2d 805 (7th Cir.1992), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993). But the *Eljer* panel applied Illinois law, and Illinois state courts have now expressly rejected *Eljer* and adopted the majority view of *Federated* and *Wyoming Sawmills. See Travelers Ins. Co. v. Eljer Mfg., Inc.,* 307 Ill.App.3d 872, 241 Ill.Dec. 178, 718 N.E.2d 1032, 1041 (1999) ("some physical injury to tangible property must be shown in order to trigger coverage"), *rev'd in part on other grounds,* 2000 WL 1763322, 2000 Ill. LEXIS 1712, at (Ill. Dec. 1, 2000) (mere installation of a defective plumbing system is not covered property damage), *reh'g granted,* 2001 Ill. LEXIS 231 (Ill. Jan. 29, 2001).

Although the Supreme Court of Missouri has not addressed this issue, the Missouri Court of Appeals commented that the integration of defective materials into a home, without more, was not covered property damage in *Hawkeye-Security Insurance Co. v. Davis,* 6 S.W.3d 419, 426 (Mo.App.1999). After careful review of this more recent line of cases, we conclude the Supreme Court of Missouri would reject Esicorp's incorporation theory and hold that there is no "property damage" unless and until the incorporation of a defective product or component results in "physical injury to tangible property" in at least some part of the system.

*Esicorp, Inc.*, 266 F.3d at 862-63. In the instant case there were no allegations that any physical damage to property, other than the inclusion of the inadequate size flue. There is no property damage covered by the policy and Plaintiffs' "incorporation theory" must fail.

The non-asbestos cases cited to by Plaintiffs are simply irrelevant to the instant case. First, they each involve food products where contaminated products were sold to third-parties

13

whose products were then rendered unusable due to the contaminated product. *See National Union Fire Ins. Co. of Pittsburgh v. Terra Industries, Inc.*, 346 F.3d 1160 (8th Cir. 2003) and *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847 (Cal. Ct. App. 2000). Also, as noted by a California federal court, there is still a requirement that there be "property damage" for there to be coverage. "Even if the Policy covered the cause of plaintiffs' losses, coverage remained unavailable absent some proof of 'property damage .'" *Gardner Const. Co. v. Assurance Co. of America*, 2000 WL 1677959, *3, 4 (N.D. Cal. Nov. 3, 2000) (internal citations omitted).

Plaintiffs also cite the case of *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo. 2003) as support for their position that misrepresentations in the sale of property can result in property damage. In *Cyprus* there are two distinctions that need to be recognized. First, subsequent events in the form of a collapse occurred at the mine two years after the sale of the property. In the instant case nothing changed about the condition of the property, the buyers simply discovered the problems associated with the size of the flues. Second, the definition of property damage in *Cyprus* included the two-fold language which has been discussed previously. Specifically, it provided for the "loss of use of tangible property which has not been physically injured or destroyed." This was one of the factors considered by the court in its interpretation and clearly provides a broader definition of what constitutes "property damage." The remaining cases cited to by Plaintiffs suffer from similar distinctions.

In *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540 (Md. 1996), the definition of property damage included the two-fold language that is not present here. The buyers in that case conceded that the money spent to fix the septic system was an economic loss and not covered by the policy. The court found, however, that under the "loss of use of tangible property that is not

physically injured" part of the "property damage" definition that there was a loss of use of the septic system which "was property damage as defined in and covered by the [insurance] policy." *Id.* at 545. Likewise, in *Gaylord Chem. Corp. v. ProPump, Inc.*, 753 So.2d 349 (La. Ct. App. 2000), the two-fold definition of "property damage" was present in the commercial liability policy. The parties did not dispute whether property damage was present for the court to decide. Rather, the arguments were over whether there was an occurrence as contemplated by the policy. As a result, there is no analysis of the policy provision regarding "property damage." In *Wood v. Safeco Ins. Co. of America*, 980 S.W.2d 43 (Mo. Ct. App. 1998), there was flooding of property which occurred after the sale of the property. The *Wood* court summarily adopted the "property damage" argument from *Sheets* without any independent analysis. *Id.* at 53. These case are clearly distinguishable from the instant case.

In this case, the allegations are that a house was purchased where, during construction, the builder installed flues which were of inadequate size. These construction issues were discovered by successor buyers. The buyers appear to want to reconstruct the fireplaces or be compensated for the diminished value. Nothing akin to a collapsed mine, a flooded mine, or an overflowed septic system has occurred. Many cases cited to be Plaintiffs are commercial liability policies or two-fold definitions of "property damage" which broaden the coverage that is present in this case. The distinctions from these cases are easily discernable and distinguishable, making their use in the analysis here limited at best.

### B. RECONSTRUCTION OF THE FIREPLACES DOES NOT CONSTITUTE "PROPERTY DAMAGE".

Plaintiffs go on to claim that tearing down and reconstructing the fireplaces will necessarily cause destruction of other property and therefore constitutes "property damage" under the policy. Both *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966 (8th Cir. 1999) and

*Economy Lumber Co. of Oakland, Inc. v. Insurance Co. of North America*, 204 Cal. Rptr. 135 (Cal. Ct. App. 1984), cases cited to by Plaintiffs in support of this proposition, involve CGL policies sold to businesses who provided a defective product or service to a customer. The policies contain different language than here. In addition, neither of the cases actually analyze or explain how they reach the conclusion that property damage exists – this is not the focus of these cases.

As recognized by the Ninth Circuit, "*Economy Lumber* sought to resolve the proper scope of the work product exclusion rather than the definition of property damage. In the work product exclusion context, the critical issue is whether the damage occurred to the insured's product or another's work. The *Economy Lumber* Court thus emphasized the difference between general contractor and sub-contractor to demonstrate that the work product exclusion did not preclude recovery by a sub-contractor when his defective workmanship caused damage to the general contractor's product." *New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696, 699-700 (9th Cir. 1991).

Likewise in *Esicorp*, issues not related to the property damage determination were the primary focus in the case. Specifically, issues with regard to what damages were recoverable under the facts of that case – attorney's fees, settlement monies paid, punitive damages. The discussion of property damage under the facts of the case were limited to a few sentences and did not provide any legal authority citations as support for the court's conclusory statement that property damage would likely result based on the allegations made.

Neither of the cases cited by Plaintiffs provides the support needed for a finding that coverage exists, based on the definition of "property damage" in the homeowners' policy and umbrella policy present here.

16

The following definitions of "Property Damage" appear in the policies at issue in this case:

> Homeowners' Policy: "physical injury to or destruction of tangible property, including the loss of its use."

> Umbrella Policy: "physical injury to or destruction of tangible property and the resulting loss of its use."

Plaintiffs have conceded that the umbrella policy provides indemnity "for loss of use damages only if the property was physically injured" while arguing that the homeowners' policy provides indemnity for "(1) a physical injury to tangible property; or (2) a loss of use of tangible property, even if it was not physically injured." Defs. Mtn. for Partial Summary Judgment, p. 14. Courts analyzing language similar to, or exactly the same as, that used in the homeowners' policy have found the language to mean the same as Plaintiffs' concession regarding the language in the umbrella policy.

In *Mutlu v. State Farm Fire and Cas. Co.*, the Illinois Court of Appeals analyzed "loss of use" language in conjunction with the definition for property damage in the policy present there. In *Mutlu* the court relied on an analysis of cases from multiple jurisdictions in deciding that there had to be physical damage to the property, even when there are "loss of use" claims. This argument makes sense.

> "The loss of use clause is introduced by the verb 'including.' The dictionary defines 'including' as 'to take in or comprise as part of a whole . . .'. The *Merriam-Webster Dictionary* 358 (1974). The loss of use clause is thus introduced as a subset of 'physical injury to or physical destruction of tangible property.' If the loss of use clause were interpreted as the [insureds] would have it, i.e. as any nonphysical injury to tangible property, the definition of property damage would effectively read: 'physical injury to . . . tangible property, including non-physical injury.' We reject such a contradictory reading."

17

*Mutlu v. State Farm Fire and Cas. Co.*, 785 N.E.2d 951, 958 (Ill. App. 2003) (quoting *Ehlers v. Johnson*, 476 N.W.2d 291, 293 (Wis. Ct. App. 1991)).

In this case the two policies provide different language to define property damage, but they both mean the same. There is not standardized language used throughout the insurance industry and simply because something is said two different ways does not mean it has two different meanings or require that it be interpreted two different ways. This is not language contained within the same policy thereby creating a question of what the difference may or may not mean. Under both policies, in order for there to be "property damage" there must be "'physical injury to or destruction of tangible property,' which took place during the policy period and was caused by 'loss or accident'". Any loss of use claim requires the presence of physical injury during the policy period and Plaintiffs' reliance on cases such as *Sheets*, discussed above, are not persuasive.

## 2. EVEN IF THERE IS A FINDING OF AN "OCCURRENCE", THERE IS STILL NO COVERAGE UNDER THE INSURANCE POLICIES.

The Plaintiffs seem to argue that the mere allegation of "negligent" conduct means that there is coverage as "an accident" under the policies. Such a broad interpretation is not warranted. The definition of occurrence is multi-part: "a loss or accident to which this insurance applies occurring within the policy period." Even if this Court believes that Oklahoma would adopt the reasoning of the courts cited to by Plaintiffs, the majority of which opinions involve different policies issued to businesses or entities rather than individuals, there is still the requirement that there be property damage in order for there to be coverage. It should be noted that it is much more likely to find coverage under business-type or "CGL" policies for construction-type defects. However, even courts considering this issue have found that there

18

cannot be an "accident" when the issue is faulty workmanship in a construction context. *See State Farm & Cas. Co. v. Tillerson*, 777 N.E.2d 986 (Ill. App. 2002). As set forth more fully above, this is not the case and no coverage exists.

Oklahoma law does not recognize an independent tort of "negligent misrepresentation." It is simply a form of negligence. *Bankers Trust Co. v. Brown*, 2005 OK CIV APP 1, ¶ 12, 107 P.3d 609, 613. In addition, a "negligent misrepresentation" type claim is somewhat akin to a "constructive fraud" claim, as recognized by the Oklahoma Supreme Court:

> Defendants' motion to dismiss characterizes the theories relied on in plaintiffs' petition as fraud, negligent misrepresentation and fraudulent misrepresentation. Although under certain circumstances a negligent or even an innocent misrepresentation may give rise to a claim known in the law as constructive fraud, such a claim requires a breach of some legal or equitable duty. *Silver v. Slusher*, 1988 OK 53, 770 P.2d 878, 882 f.n. 11, *cert. denied* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

*Rogers v. Meiser*, 2003 OK 6, 68 P.3d 967, 971 fn. 7. "'Liability for constructive fraud may be based on a negligent misrepresentation. Even an *innocent misrepresentation* may constitute constructive fraud where there is an underlying right to be correctly informed of the facts.'" *Gentry v. American Motorist Ins. Co.*, 1994 OK 4, 867 P.2d 468, 471 (quoting *Faulkenberry v. Kansas City Southern Railway Company,* 1979 OK 142, 602 P.2d 203, 206 fn. 6). In this case, there is an underlying right for the buyers of the home to be informed correctly of the facts, making this claim more attune to a type of "fraud" claim rather than a negligence claim.

Whether or not this Court makes the determination that there is "an occurrence" as defined by the policy, this is but one small part of the requirements for invoking coverage. As set forth in other sections of this brief, there are multiple reasons why no coverage exists for the claims made by the Williamses against Plaintiffs.

### 3. MULTIPLE EXCLUSIONS EXIST WHICH PRECLUDE COVERAGE.

As set forth above, Defendants are entitled to rely upon the policy exclusions in

determining their duty to defend – not just their duty to indemnify. Defendants have set forth in their motion for summary judgment arguments regarding exclusions for intentional acts and damages to the insureds' own property. Plaintiffs have creatively attempted to argue why they do not apply. At first glimpse the arguments made by Plaintiffs may seem to make some sort of sense, until the reader focuses on the facts of the case – taken as a whole. All of the claims in the case evolve from a construction defect – an event which occurred before Plaintiffs even owned the home. The sale of the home to the Williamses, and the Williamses taking ownership of the property, was not the cause of the problems with the property. While Plaintiffs argue that the Williamses alleged damages were caused by their taking ownership of the residence – this is simply not the case. The discovery of the presence of wrong size flues caused the property to have a lower value to the Williamses than the price they paid for the home, this is not "property damages" as contemplated by the insurance policies.

First, the construction defect exclusion includes coverage. The property coverage portion of the homeowners' policy provides for the following exclusion:

> Faulty planning, construction or maintenance. We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment use for construction or repair.

Great Northern Policy, B-8. There is a clear intention to exclude from coverage any issues related to construction or maintenance. Plaintiffs themselves could never have made a claim under the insurance policies for the damages alleged here, but seek recovery for the Williamses on claims they could never make on their own.

Second, every insurance policy has an implied exclusion against non-fortuitous events. *See Bank of Oklahoma, N.A. v. Continental Cas. Co.,* 1992 OK CIV APP 128, 849 P.2d 1091, 1092 (even "all-risk" policies contain this "unnamed exclusion"); LEE R. RUSS & THOMAS F. SEGALLA, 7 COUCH ON INSURANCE 3D § 101:2, at 101-8 (1997) ("Implicit in the concept of insurance is that the loss occur as a result of a fortuitous event . . . ."). This principle is commonly referred to as the "fortuity doctrine" and applies to all insurance contracts. *See Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 767 (Tx. Ct. App. 2006). Essentially, the fortuity doctrine "reforms the contract to exclude the known loss under the assumption that no reasonable insurer would assume such a 'risk.'" 7 COUCH ON INSURANCE 3D § 102:9, at 102-26 (1997). Because insurance policies only insure fortuities, "a fraud is worked when they are misused to insure a certainty." *Aetna Cas. Sur. Co. v. Dow Chemical Co.*, 10 F. Supp.2d 771, 789 (E.D. Mich. 1998).

> The fortuity doctrine precludes coverage for two categories of losses: known losses and losses in progress. A "known loss" is one that the insured knew had occurred before the insured entered into the contract for insurance. A "loss in progress" involves those situations in which the insured knows, or should know, of a loss that is ongoing at the time the policy is issued.

*Warrantech*, 210 S.W.3d at 766.

In Oklahoma, "[t]he general rule . . . is that the burden is upon the insured to prove that a loss occurred and that it was due to some fortuitous event or circumstance." *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir. 1978) (applying Oklahoma law). A fortuitous event "is an event which so far as the parties to the contract are aware, is dependent on chance." *Id.*; *see also Bank of Oklahoma,* 849 P.2d at 1092.

The insurance policies here contain an implied exclusion against non-fortuitous events. *See Bank of Oklahoma*, 849 P.2d at 1092. Plaintiffs must prove that the insurable event was "fortuitous" in nature. Under the facts of this case, Plaintiffs should be credited with knowledge

of a "loss in progress" to the extent that coverage is not available under the facts of this case. Accordingly, coverage is precluded for the claims made by the Williamses against Plaintiffs.

### 4. THERE WAS NO DUTY TO DEFEND PLAINTIFFS FOR CLAIMS MADE BY THE WILLIAMSES.

Defendants have addressed the duty to defend in previous sections and simply reiterate here that the claims made by the Williamses are not covered claims. The duty to defend is a duty against suits "seeking <u>covered</u> damages . . . for property damages." Because Plaintiffs cannot recover damages for any of the claims that are being made against them, there is simply no duty to defend.

## II. DEFENDANTS OWE NO DUTY TO INDEMNIFY PLAINTIFFS.

In analyzing their duty to defend above, Defendants have set forth arguments that correspond to their duty to indemnify Plaintiffs as well. As more clearly set forth above, there is no coverage under the insurance policies and Defendants owed no duty to indemnify Plaintiffs in the suit brought by the Williamses.

The insurance policies at issue in this case are liability policies which cover damage to the property of others. Here, if there was actually "property damage" as contemplated by the insurance policies, it occurred long before the property was sold by Plaintiffs and it did not involve damage to the property of others – thereby precluding coverage under the insurance policies.

WHEREFORE, premises considered, Defendants request the Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

**RHODES, HIERONYMUS, JONES, TUCKER & GABLE, PLLC**

/s/ Kerry R. Lewis
Kerry R. Lewis, OBA 16519
John H. Tucker, OBA 9110
100 West 5th Street Suite 400
Tulsa, Oklahoma 74103-4287
(918) 582-1173
(918) 592-3390 Facsimile
jtucker@rhodesokla.com
klewis@rhodesokla.com
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on the 17th day of July, 2009, I electronically transmitted the attached document to the Court's electronic filing system which will send the document to the following ECF registrants:

A. Mark Smiling
msmiling@smilinglaw.com

R. Lawson Vaughn, III
lvaughn@smilinglaw.com

/s/ Kerry R. Lewis
Kerry R. Lewis