UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. David Boggs | ) | |
| 2. Sue Boggs, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CV-660-CVE-PJC |
| | ) | |
| 1. Great Northern Insurance Company, | ) | |
| 2. Federal Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS GREAT NORTHERN INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING INSURANCE COVERAGE

COME NOW Defendants Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal Insurance") (jointly referred to as "Defendants") and submit the following reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment [Dkt. No. 27].

Defendants faced a quandary on how to properly respond to the simultaneous filings by Plaintiffs of both their Response to Defendants' Motion for Summary Judgment ("Response") [Dkt. No. 27] and Plaintiffs' Motion for Partial Summary Judgment ("Motion") [Dkt. No. 26]. Essentially, Plaintiffs have filed the same brief twice using, for all intents and purposes, the same facts in each and adopting by reference, in its entirety, the arguments of their Motion as the argument for their Response. While Plaintiffs may have ultimately responded to the various arguments Defendants have made in their Motion for Summary Judgment – it is not easily discernable by the method Plaintiffs have used to respond. The reader is left to try to figure out

what responses have truly been made to Defendants' Motion for Summary Judgment and what is simply the argument for Plaintiffs' Motion.

Plaintiffs' ultimate goal appears to be to confuse the issues and take a basic and straightforward coverage and/or duty to defend question, which has been presented for the Court's consideration, and insert a variety of issues to be decided which only become "issues" when the most basic and fundamental questions underlying the case are skipped over and ignored. These basic and fundamental questions, when answered, are dispositive of the case and show Plaintiffs' arguments in their Motion and Response to be simply red herrings intent on redirecting the Court's focus from the real issues at hand.

Plaintiffs also attempt to gain sympathy by complaining that the "Cadillac" policy they thought they were purchasing turned out to be a "Chevy" – based on the denial of coverage for claims made by the Williamses in the Underlying Litigation which sought re-construction costs associated with replacing fireplace flues which were initially placed in the Residence at the time of construction and were of inadequate size. However, Plaintiffs fail to discuss the "premium" coverages that were afforded under Defendants' Insurance Policies – namely, coverage for kidnapping, identity fraud, losses incurred due to loss or theft of credit cards, forgery or counterfeiting, and multiple other coverages that are not included in the run-of-the mill "Chevy" policies. Plaintiffs' complaints stem from the fact that the coverage they sought was not contemplated by the Insurance Policies and therefore not available to them. This does not make the Insurance Policies "Chevys." Regardless of "nameplate", there never was any coverage.

I.  **RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS.**

Defendants have responded to Plaintiffs' Statement of Additional Material Undisputed Facts as part of their Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support filed simultaneously herewith.

II.  **ISSUES BEFORE THE COURT ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

   A.  **THERE IS NO "OCCURRENCE" RESULTING IN "PROPERTY DAMAGE" AS THOSE TERMS ARE DEFINED IN THE INSURANCE CONTRACTS.**

The two insurance policies in this case "cover damages a covered person is legally obligated to pay for *personal injury* or *property damage* which take place anytime during the policy period and are caused by an *occurrence*, unless stated otherwise or an exclusion applies." *See* Fact 6 (emphasis added). Both policies define occurrence to mean "a loss or accident to which this insurance applies occurring within the policy period." These provisions make clear that it is necessary for there to be personal injury or property damage during the coverage period, caused by a loss or accident, in order for there to be a covered claim. Because there are no claims for personal injuries being made by the Williamses (who were the purchasers of the residence from Plaintiff), the first issue for consideration by the Court is whether there is a "property damage" claim being made which could invoke coverage.

   i.  **Is there "Property Damage"?**

   a.  **The Construction of the Fireplaces as the Alleged "Property Damage"**

This case involves construction defects in multiple fireplaces, which were the responsibility of the builder and not Plaintiffs, which the Williamses later decided required repair in order to use without danger of carbon dioxide emissions. *See* Amended Petition and Third-Party Petition, ¶ 3; Pl. Ex. 5, Rsp. to Interr. No. 8. The construction of the fireplaces did not

occur "during the policy period" as required to invoke coverage. As a result, there can be no claim that the repairs necessitated by the construction defects constitute "property damage" under the policy. The fireplaces did not damage any property – let alone property of someone not the insured.

In an attempt to avoid the "owned property" exclusion, Plaintiffs have argued that the occurrence is based on the Williamses' ownership of the Residence. They claim this "ownership" is what caused the alleged damages. Pl. MSJ, p. 23. However, this argument also requires events outside of the coverage period. Insurance coverage for the Residence was homeowners' coverage, which ceased to exist once Plaintiffs no longer owned the Residence. In an attempt to get around the owned property exclusion, Plaintiffs have now represented to the Court that the "occurrence" was after they owned the Residence. This results in no occurrence within the coverage period.

### b. Loss of Use as the Alleged "Property Damage"

Plaintiffs have done a very good job of making the waters murky on the loss of use issue. However, as set forth and argued in Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment, the loss of use of tangible property requires physical injury or destruction to property. In this case, there is no such physical injury or destruction of property which occurred during the policy period, and which resulted in any "loss of use." Plaintiffs attempt to create coverage where none exists with the argument that "loss of use" standing alone is "property damage."

> Even if these events could somehow constitute an accident, the general rule is that loss of investment does not constitute damage to tangible property. *Travelers Indemnity Co. v. State,* 140 Ariz. 194, 680 P.2d 1255, 1257 (App.1984); *see also McCollum,* 644 P.2d at 286 (loss of future profits not covered by CGL policy); *Hommel v. George,* 802 P.2d 1156, 1158 (Colo.Ct.App.1990) (pure economic losses are intangible), *cert. denied,* (Colo. Dec. 17, 1990); *Hartford Accident &*

4

> *Indemnity Co. v. Case Found. Co.*, 10 Ill.App.3d 115, 294 N.E.2d 7, 13 (1973) (investments, anticipated profits, and business ventures are intangibles); *L. Ray Packing Co. v. Commercial Union Ins. Co.*, 469 A.2d 832, 835 (Me.1983) (mere economic damage is not loss of use of tangible property). In addition, while some courts have found coverage for consequential damages when there is physical injury to the property itself, we will not extend the concept to claims for "loss of use" of property. *See Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 83 (2d Cir.1983) (no recovery for intangible losses unless physical damage to others' property); *Travelers*, 680 P.2d at 1257 (coverage for consequential damages where physical injury to tangible property); *Hartford*, 294 N.E.2d at 14 (may have coverage if plaintiff alleged actual damage to property itself which produced claimed damages).

*Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 425 (Minn. App. 1995). Here, no damage or destruction to tangible property was caused by any of the alleged wrongful acts and, therefore, there is no coverage.

### ii. Is there an "Occurrence"?

Even if there is "property damage," it did not result from a "loss or accident." The policies' definition of "occurrence" requires that there be a "loss" or "accident" in order for there to be coverage. Plaintiffs' argument on this issue is that there are claims for negligent conduct, so there must be an "accident" as contemplated by the policy. Plaintiffs then go on to cite to the claims for "negligent repair" and "negligent misrepresentation" made by the Williamses. Plaintiffs' argument seems to be that if they did not intend the damages, then their acts automatically qualify as an "accident." However, when considering this issue, courts have determined that the intent to have others rely on the representations is enough to preclude it from being an accident.

> An accident is an unexpected or unforeseen happening. *Sage Co. v. Insurance Co. of N. Am.*, 480 N.W.2d 695, 698 (Minn.App.1992). A claim for negligent misrepresentation requires that a pecuniary loss be caused by justifiable reliance on a statement. *Florenzano v. Olson*, 387 N.W.2d 168, 174 n. 3 (Minn.1986). Negligent misrepresentations cannot be "accidents" because the insured intends to induce reliance on the statement. *First Wyo. Bank, N.A., Jackson Hole v. Continental Ins. Co.*, 860 P.2d 1094, 1100 (Wyo.1993) (citing *Dykstra v.*

*Foremost Ins. Co.*, 17 Cal.Rptr.2d 543, 545 (1993)); *cf. McCollum v. Insurance Co. of N. Am.*, 132 Ariz. 129, 644 P.2d 283, 285 (App.1982) (negligent misrepresentations did not constitute occurrence where nothing happened to property itself); *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 273 (Tex.Ct.App.1992) (negligent misrepresentations that resulted in loss of investment in real estate not property damage). The facts of this case support Aetna's position that there was no accident.

*Tschimperle*, 529 N.W.2d at 424.

> In *Nova Casualty Co. v. Able Construction, Inc.*, 1999 UT 69, 983 P.2d 575, the supreme court examined a similar insurance policy to determine if there was a duty to defend claims against its insured for intentional misrepresentation, negligent misrepresentation, and breach of warranty.[FN4] *See id.* at ¶¶ 12-18. The court ultimately held that allegations of intentional misrepresentation and negligent misrepresentation in conjunction with the sale of real property do not constitute an occurrence or accident under a commercial general liability insurance policy. *See id.* at ¶¶ 14-16. The court first determined that intentional misrepresentation is a willful misrepresentation, as is fraud, and thus cannot be an accident covered by the policy. *See id.* at ¶ 14. In addressing negligent misrepresentation, the court followed the general approach taken by California courts, explaining that "allegations of negligent misrepresentation are not an occurrence or accident under commercial general liability insurance policies because the insured had the intent to induce reliance." *Id.* at ¶ 16.

*Green v. State Farm Fire & Cas. Co.*, 127 P.3d 1279, 1283 (Utah App. 2005).

It is clear from the Amended Petition and Third-Party Petition, that there is simply a bald assertion by the Williamses that Plaintiffs owed them a duty to repair the fireplaces to bring them up to building code standards. They make no factual allegations regarding any repairs actually made by Plaintiffs. All allegations regarding repairs made are contained within the Third-Party Petition against the builder.

In addition to the responsive arguments presented here, Defendants have addressed Plaintiffs' arguments more fully in Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment. However, it should be noted that even if the claims made by the Williamses could arguably qualify as an "accident" and thereby an "occurrence," it is still

necessary for there to be "property damage" in order for there to be coverage under the Insurance Policies.

### iii. Is there Causation?

Even if there is "property damage" and an accident which can constitute an "occurrence," there is still no requisite causation between the two. As alleged by the Williamses in their Amended Petition and Third-Party Petition, the builder was responsible for the construction of the fireplaces in violation of applicable Codes and the subsequent repairs. This construction and repair by the builder was the causation nexus between the injuries suffered by the Williamses and the damage to tangible property alleged. Any negligent repair (by parties who did not actually physically undertake the repairs themselves but relied on the builder as recognized by the petition) or negligent misrepresentations on the part of the Plaintiffs are not the reason that the fireplaces contain flues that are too small – which is the entire reason for the Williamses' suit. Without causation, there is no coverage. *See Smith v. Katz*, 595 N.W.2d 345 (Wisc. 1999).

### B. INSURANCE POLICY EXCLUSIONS PROHIBIT RECOVERY BY PLAINTIFFS.

As set forth in Defendants' Motion for Summary Judgment Regarding Insurance Coverage, policy exclusions exist which prohibit recovery by Plaintiffs. The arguments made by Plaintiffs regarding these exclusions have been addressed more fully in Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment.

### C. PUNITIVE DAMAGES ARE NOT COVERED BY THE INSURANCE POLICIES.

Plaintiffs apparently concede this issue, as it is not addressed in any of their briefing. Therefore, Defendants refer the Court to the arguments set forth in their Motion for Summary Judgment Regarding Insurance Coverage.

### D. PLAINTIFFS CANNOT SUCCEED ON THEIR CLAIMS FOR BAD FAITH.

Once again, Plaintiffs do not seem to undertake an argument disputing Defendants' argument that there is no evidence with which to establish bad faith. As is clearly evidenced by the cases cited to by Defendants, there is case law which clearly supports their position and reasons for denial of the claims. In this case, there is no "clear showing that the insurer unreasonably, and in bad faith, with[held] payment of the claim of its insured" as required in order to succeed on a claim for bad faith in Oklahoma. *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, 637 P.2d 583, 587. Because "[t]here is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured," Defendants' motion for summary judgment on this issue must be granted. *VBF, Inc. v. Chubb Group of Ins. Companies*, 263 F.3d 1226, 1234 (10th Cir. 2001) ( quoting *Claborn v. Wash. Nat'l Ins. Co.*, 1996 OK 8, 910 P.2d 1046, 1051).

### E. THERE WAS NO DUTY TO DEFEND IN THIS CASE.

Plaintiffs' entire brief seems to be focused on Defendants' duty to defend in this case. Accordingly, Defendants' arguments and responses to Plaintiffs' motion are contained in Defendants' Response to Plaintiffs' Partial Motion for Summary Judgment and Brief in Support.

WHEREFORE, premises considered, Defendants pray that the Court grant Defendants' Motion for Summary Judgment Regarding Insurance Coverage in its entirety and for such other relief as the Court deems just and equitable.

Respectfully submitted,

**RHODES, HIERONYMUS, JONES, TUCKER & GABLE, PLLC**

/s/ Kerry R. Lewis
Kerry R. Lewis, OBA 16519
John H. Tucker, OBA 9110
100 West 5th Street Suite 400
Tulsa, Oklahoma 74103-4287
(918) 582-1173
(918) 592-3390 Facsimile
jtucker@rhodesokla.com
klewis@rhodesokla.com
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on the 17th day of July, 2009, I electronically transmitted the attached document to the Court's electronic filing system which will send the document to the following ECF registrants:

A. Mark Smiling
msmiling@smilinglaw.com

R. Lawson Vaughn, III
lvaughn@smilinglaw.com

/s/ Kerry R. Lewis
Kerry R. Lewis